IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LENOLA BRADSHAW,
on behalf of S.G.,

            Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

          Defendant.

CIVIL ACTION FILE NO.

1:13-CV-1171-JFK

**<u>FINAL OPINION AND ORDER</u>**

Plaintiff Lenola Bradshaw brings this action on behalf of her grandson, claimant S.G., pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).[1]  [Doc. 3]. The claimant is a child under the age of 18 with an alleged disability onset date of August 1, 2007.  [Record ("R.") at 17, 113-19].  Plaintiff Bradshaw seeks to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied Plaintiff's application for supplemental security income filed on behalf of the claimant.  For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **AFFIRMED**.

--------

[1]The court will refer to the minor child as "claimant" and to Lenola Bradshaw as "Plaintiff."

## I.   Procedural History

Plaintiff Lenola Bradshaw applied for Supplemental Security Income on behalf of her grandson, claimant S.G., on August 8, 2008.  [R. at 17, 113-19].  After Plaintiff's application was denied initially and on reconsideration, she requested an administrative hearing, which was held before an Administrative Law Judge ("ALJ") on September 28, 2011.  [R. at 33-68].  The ALJ issued a decision on October 24, 2011, denying Plaintiff's application.  [R. at 17-28].  Plaintiff requested review of the ALJ's decision, but the Appeals Council denied her request on April 27, 2013, making the hearing decision the final decision of the Commissioner.  [R. at 1-5].  On April 11, 2013, Plaintiff filed the above-styled action in this court seeking review of the final decision.  [Doc. 3].

## II.   Facts

The ALJ found that claimant S.G., who was born in 2001, has attention deficit hyperactivity disorder, borderline intellectual functioning, asthma, speech impairment, and receptive/expressive language delay.  [R. at 20, 127].  Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ concluded that they did not meet or medically equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 20-21].  The ALJ also found that the

claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings. [R. at 21-28]. Therefore, the claimant was not under a disability. [R. at 28].

The ALJ's decision [R. at 17-28] states the relevant facts of this case as modified herein as follows:

Records from Fulton County School District show that, since at least second grade, Individualized Education Programs were developed for the claimant. He was found eligible for special education services due to deficits in all academic areas and receptive-expressive language skills, which were confirmed by the Criterion-Referenced Competency Test and a speech language evaluation and which resulted in significantly below grade level functioning. The claimant struggled with basic skills and, even after learning a skill, regularly alleged not learning or knowing that skill. Results of intelligence testing in November 2008 revealed verbal, performance, and full scale IQ scores of 75, 103, and 75 indicative of borderline intellect. In addition, per a September 2008 psychiatric evaluation, the claimant carries a diagnosis of attention deficit hyperactivity disorder ("ADHD"), which also contributes to his poor academic functioning. Similarly, based upon a consultative psychological evaluation of the claimant in May 2010, Dawn Allen, Ph.D., diagnosed

3

ADHD and borderline intellectual functioning with verbal, performance, and full scale IQ scores of 59, 59, and 60, respectively, on the Wechsler Intelligence Scale for Children Fourth Edition.  Further, records beginning April 2008 from Rajani S. Chaudhari, M.D., and Narendra K. Nagareddy, M.D., show that the claimant received psychotherapy and medication management for ADHD.  (Exs. 16E, 1F, 3F, 6F, 9F, 10F, 13F, 16F, and 17F).

The claimant alleges disability due to asthma, ADHD, speech impairment, and learning difficulties.  He has received special education services for his deficient intellect and speech, which have affected his attention and social skills and significantly affected his ability to learn.  The claimant's asthma has generally been controlled with medication but does impose limitations.  In fact, treating physician Dr. Nagareddy opined that the claimant's limitations are: marked in acquiring and using information; moderate in attending and completing tasks, interacting and relating, moving about and manipulating, and health and physical well-being; and mild in caring for himself.  (Ex. 14F).

The claimant has cognitive deficiencies due to borderline intellectual functioning, which is further exacerbated by ADHD and low expressive-receptive language skills, which have resulted in difficulty acquiring and learning information.

4

The claimant has academic skills below grade level and difficulty retaining information spawning special education placement in all academic subjects, teacher assistance for completing assigned tasks, and modifications during testing and classroom instruction such as small group instruction, charts, pictures, and oral discussion. Despite such tactics, as of September 2011, the claimant continued to exhibit poor academic performance. (Exs. 7E, 16E at 3, 4F at 2, and 10F at 5).

The claimant's ability to focus and maintain attention and concentration is limited due to ADHD. He loses focus, fails to complete classroom assignments, and requires teacher assistance in completing tasks. Notably, the claimant's IQ scores in May 2010 were lower than scores obtained in November 2008, which Dr. Allen felt was due to the claimant's low motivation and inability to stay on task and maintain attention. (Exs. 7E, 16E at 36, 4F at 3, 5F, 10F at 5). However, soon after beginning medication in September 2008, the claimant's symptoms decreased. The claimant's grandmother reported less hyperactivity and greater ability to respond to direction. In addition, James E. Askew, Ph.D., the claimant's counselor, stated in June 2009 that the claimant was making great progress in psychotherapy. (Exs. 1F at 4, 15F at 9).

The claimant's receptive-expressive language delay interferes with his ability to communicate effectively and understand instructions and classroom materials.

5

However, school records indicate the claimant earned a satisfactory grade in behavior, indicating no difficulty interacting with peers. (Exs. 16E at 35 and 37, 3F, and 4F at 4 and 5).

While the claimant has asthma, which reasonably interferes with his exertional tolerance, he retains the physical ability to manipulate his hands and body to perform physical activities such as walking, running, throwing, jumping, and operating scissors, zippers, buttons, video game controls, shoelaces, eating utensils, writing instruments, toothbrushes, combs, and hairbrushes. Dr. Bush's examination of the claimant in July 2010 revealed no deficits in the claimant's motor functioning. (Ex. 11F at 4).

The evidence fails to establish that the claimant has difficulty caring for his personal toileting, grooming, and dressing needs, or is unable to feed himself. While the claimant has a language delay, he has sufficient speech to communicate his wants and needs to have these met. In addition, although the claimant has ADHD, the evidence fails to establish that the claimant is unable to display emotions appropriately, destroys property, is aggressive to people or animals, or steals. (Ex. 4F at 6). In fact, Dr. Nagareddy's mental status exams of the claimant were essentially unremarkable to orientation, mood, and thought processes. (Ex. 16F).

6

Consultative examinations of the claimant in December 2008 and July 2010 by Jerry W. Bush, M.D., were negative for asthma symptoms or any other significant abnormality. Dr. Bush found clear lungs without wheezes, rales, rhonchi, or use of accessory muscles, and no abnormalities of the head, heart, abdomen, or extremities, or of respiratory, musculoskeletal, or neurologic function. Dr. Bush noted that the claimant was unable to sit still for prolonged periods; however, he responded to directed emphatic commands. Dr. Bush found the claimant only mildly to moderately impaired due to asthma, ADHD, and speech impairment. Dr. Bush specifically noted that the claimant had not required recent treatment for asthma; thus, Dr. Bush characterized the condition as mild. Further, Dr. Bush found the ADHD and speech delay caused no more than moderate impairment in the claimant's social, concentration, persistence, adaptation, and short-term memory skills. (Exs. 7F and 11F). The claimant's asthma has not interfered with his growth, as Dr. Chaudhari's progress notes document normal physical growth and development. (Ex. 15F).

A review of the evidence fails to establish numerous emergency room visits or hospitalizations for exacerbation of asthma. The claimant has not required inpatient mental health services for ADHD or significant mental incapacitation. Since the alleged onset date, treatment has been primarily conservative in nature consisting of

7

only intermittent medicinal therapy with no physician rendering the claimant disabled. As for side effects of medication, the medical evidence fails to establish persistent complaints of or treatment for any medication side effects. The evidence reveals that the claimant has not required frequent, occasional, or even intermittent emergency room visits or other form of physician intervention for significant incapacitating side effects of medication. Further, the evidence fails to document excessive school absences, which suggests his impairments do not interfere with his school attendance. (Ex. 16E at 37).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III. Standard of Review

Social Security law provides that an individual under the age of eighteen will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The impairment or impairments must result from anatomical, psychological, or

8

physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 1382c(a)(3)(D).

Social Security regulations provide a sequential evaluation process consisting of three steps when determining if a child is disabled.  20 C.F.R. § 416.924.  The first step requires the ALJ to determine whether the child is engaged in substantial gainful activity.  A child is not disabled if he is engaged in such activity.  Id.  If the child is not engaged in substantial gainful activity, then the ALJ must determine at the second step whether the child has a severe impairment.  Id.  A child who does not have a severe impairment will be found not disabled.  If a severe impairment is found, then the ALJ must determine whether the impairment meets, medically equals, or functionally equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

"[E]ven if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings.  In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities."  Shinn ex rel. Shinn v. Comm'r of Social Security, 391 F.3d 1276, 1279 (11th Cir. 2004).  The child's functioning in the

9

following six domains will be considered: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  The child's impairment functionally equals the Listings if the child has "marked" limitations in two of the above-listed domains or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).

The scope of judicial review of the Commissioner's final decision is limited. "We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards."  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant was born on March 19, 2001.  Therefore, he was seven years old, a school-age child, on August 8, 2008, the date application was filed, and was 10 years old when the ALJ's decision was issued.  (20 C.F.R. § 416.926a(g)(2)).

10

2.      The claimant has not engaged in substantial gainful activity since August 8, 2008, the application date.  (20 C.F.R. §§ 416.924(b) and 416.971, *et seq.*).

3.      The claimant has the following severe impairments: attention deficit hyperactivity disorder; borderline intellectual functioning; asthma; speech impairment; and receptive/expressive language delay. (20 C.F.R. § 416.924(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 416.924, 416.925, and 416.926).

5.      The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings.  (20 C.F.R. §§ 416.924(d) and 416.926a).

6.      The claimant has not been disabled, as defined in the Social Security Act, since August 8, 2008, the date the application was filed.  (20 C.F.R. § 416.924(a)).

[R. at 17-28].

## V.      Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that the claimant has not engaged in substantial gainful activity since August 8, 2008, the application date.  [R. at 20].  At the second step, the ALJ determined that the claimant's attention deficit hyperactivity disorder ("ADHD"), borderline intellectual functioning, asthma, speech impairment, and receptive/expressive language delay are severe impairments.  [R. at 20].  As noted *supra*, a child's impairment functionally

11

equals the Listings if he has "marked" limitations in two of the above-listed domains or "extreme" limitations in one domain. 20 C.F.R. § 416.926a(d). The ALJ found that the claimant does not have any extreme limitations and that he has marked limitations in only one domain: acquiring and using information. [R. at 23]. In the other five domains, the ALJ found that the claimant has less than marked limitations. [R. at 23-28]. Therefore, the ALJ concluded at the third step of the sequential evaluation that the claimant is not disabled because he does not have an impairment or combination of impairments that meets, medically equals, or functionally equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 20-28].

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. According to Plaintiff, the ALJ committed error because he failed to acknowledge that the claimant's teachers found marked limitations in a second area: attending and completing tasks. [Doc. 10 at 17-21]. Plaintiff also contends that the although the ALJ found that the claimant had improved with medication, he did not acknowledge or weigh evidence that despite any improvement, the claimant continued to have marked impairments in attending and completing tasks. [Doc. 10 at 21-23].

In October 2008, Ericka Tillman, the claimant's second grade teacher, completed a teacher questionnaire designed by the Social Security Administration. [R.

12

at 278-85].  Ms. Tillman had been the claimant's teacher for two months at the time she completed the questionnaire.  [R. at 278].  Under the heading of "attending and completing tasks," Ms. Tillman rated the claimant's limitations for each of twelve activities on a five-point scale from "no problem" to "a very serious problem."  [R. at 280].  Although the questionnaire does not use the same terminology as the Social Security regulations, Plaintiff correctly notes that "a very serious problem" correlates to the "extreme" regulatory category.  20 C.F.R. § 416.926a(e).  "A serious problem" on the questionnaire correlates to the "marked" regulatory category.  Id.  Ms. Tillman rated the claimant as having "very serious problems," or extreme limitations, on four of the twelve activities: refocusing to task when necessary; carrying out multi-step instructions; working without distracting self or others; and working at reasonable pace/finishing on time.  [R. at 280].  She rated the claimant as having "serious problems," or marked limitations, on three of the twelve activities: paying attention when spoken to directly; focusing long enough to finish assigned activity or task; and completing work accurately without careless mistakes.  [Id.].  Ms. Tillman rated the claimant as having milder limitations on the five remaining activities.  [Id.].  She also explained that the claimant "is often and easily distracted.  He does complete his homework but rarely completes classwork accurately."  [R. at 280].

13

In March 2010, third grade teacher Delicia Williams also completed the teacher questionnaire. [R. at 157-66]. Ms. Williams had been the claimant's teacher for one school year at the time she completed the questionnaire. [R. at 157]. Under the heading of "attending and completing tasks," Ms. Williams rated the claimant's limitations for each of thirteen activities on a five-point scale from "no problem" to "a very serious problem." [R. at 159]. Ms. Williams rated the claimant as having "very serious problems," or extreme limitations, on one of the thirteen activities: completing work accurately without careless mistakes. [R. at 159]. She rated the claimant as having "serious problems," or marked limitations, on two of the thirteen activities: working without distracting self or others and working at reasonable pace/finishing on time. [Id.]. Ms. Williams rated the claimant as having milder limitations on the ten remaining activities. [Id.]. She also explained that the claimant "requires daily teacher assistance when completing assigned task. . . . Student supports include speech therapy and small group instruction held [in] a special education classroom." [R. at 159].

Plaintiff argues that the ALJ did not acknowledge or evaluate this evidence which allegedly shows that the claimant has marked limitations in attending and

14

completing tasks.[2]  Citing Social Security Ruling ("SSR") 09-2p, Plaintiff contends that the ALJ was obligated to consider information supplied by teachers when assessing the functioning of a child.  [Doc. 10 at 20-21].  Plaintiff also cites SSR 06-3p in support of the argument that opinions from non-medical sources such as teachers can outweigh the opinion of a medical source, including a treating source.  [Doc. 10 at 20].  According to Plaintiff, because the ALJ ignored the questionnaires from the claimant's teachers, the ALJ's decision is not supported by substantial evidence.  [Id.].  The court finds Plaintiff's arguments unpersuasive.

The Eleventh Circuit has held that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . ."  Dyer v. Barnhart,

---

[2]The relevant regulations provide that a child aged 6 to 12 without an impairment in attending and completing tasks should be able to: focus his attention in a variety of situations in order to follow directions; remember and organize his school materials; complete his classroom and homework assignments; concentrate on details and not make careless mistakes in his work (beyond what would be expected in other children his age who do not have impairments); change his activities or routines without distracting himself or others; stay on task and in place when appropriate; sustain attention well enough to participate in group sports; read by himself; and be able to complete a transition task without extra reminders or accommodation.  20 C.F.R. § 416.926a(h)(2)(iv).  A child may have limited functioning in attending and completing tasks if he is: easily distracted; slow to focus  on or fails to complete activities of interest; repeatedly sidetracked; easily frustrated and gives up on tasks; and in need of extra supervision to keep him engaged in an activity.  20 C.F.R. § 416.926a(h)(3).

AO 72A

(Rev.8/82)

395 F.3d 1206, 1211 (11th Cir. 2005).  The legal standard is "whether the ALJ's conclusion as a whole was supported by substantial evidence in the record."  Id. Nevertheless, and contrary to Plaintiff's argument, the ALJ specifically cited to the questionnaires completed by Ms. Tillman and Ms. Williams. [R. at 23-24].  The ALJ's decision indicates that he was aware of and considered the questionnaires when evaluating Plaintiff's claim.  The fact that the ALJ did not mention Ms. Tillman and Ms. Williams by name is of no consequence.

The relevant regulations provide that evidence from acceptable *medical* sources is necessary to establish whether a claimant has a medically determinable impairment; however, the regulations indicate that the Commissioner's use of evidence from *non-medical* sources is permissive.  See 20 C.F.R. § 416.913.  For example, 20 C.F.R. § 416.913(d) provides that in order to determine the severity of an impairment and the resulting functional limitations, the Commissioner "may . . . use evidence from other sources," such as teachers and other educational personnel.  20 C.F.R. § 416.913(d)(2). Similarly, SSR 09-2p provides that evidence from non-medical sources "can also be very important to our understanding of the severity of a child's impairment(s) and how it affects day-to-day functioning."

16

The ALJ may determine that an opinion from a non-medical source such as a teacher is significant, but nothing in the regulations indicates that such an opinion is entitled to any special deference. See 20 C.F.R. § 416.927. This is in contrast to regulations which provide that a medical opinion from a treating source will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). If the treating source's opinion is not given controlling weight, then the Commissioner is required to apply the following six factors in determining the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors.[3] See 20 C.F.R. § 416.927(c). Even if the opinions of treating physicians are not given controlling weight, they must be accorded substantial or considerable weight unless good cause exists to discredit these opinions. See Lewis, 125 F.3d at 1440; Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050,

---

[3]This six-factor analysis is used to determine the weight to give to any medical opinion, not just opinions from treating sources. See 20 C.F.R. § 416.927(c).

17

1053 (11th Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985); 20 C.F.R. § 416.927(c)(2).

In the present case, the ALJ relied extensively upon the opinion of the claimant's treating psychiatrist, Dr. Narendra Nagareddy.  [R. at 22, 28, 322-23, 338-50].  Dr. Nagareddy treated the claimant from September 2009 through August 2011.  [Id.].  In an evaluation completed on December 4, 2010, Dr. Nagareddy opined that the claimant has "marked" impairments in only one domain of functioning: acquiring and using information. [R. at 322].  Dr. Nagareddy found that the claimant has either "moderate" or "mild" impairments in the other five domains listed in 20 C.F.R. § 416.926a(b)(1): attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being.  [R. at 322-23].  The ALJ stated that he assigned controlling weight to the opinion of Dr. Nagareddy.  [R. at 28].  As a result, the ALJ made findings identical to Dr. Nagareddy. The ALJ concluded that the claimant does not have any extreme limitations and that he has marked limitations in only one domain: acquiring and using information.  [R. at 23].  In the other five domains, the ALJ found that the claimant has less than marked limitations.  [R. at 23-28].

18

As noted *supra*, 20 C.F.R. § 416.927(c) provides that a six-factor analysis is to be used in determining the weight to give to a medical source's opinion.  SSR 06-3p provides that "these same factors can be applied to opinion evidence from 'other sources,' . . . such as teachers and school counselors, who have seen the individual in their professional capacity."  However, 20 C.F.R. § 416.927(c) indicates that the ALJ need not go through the six-factor analysis in evaluating the opinions from non-treating sources if he gives a treating source's opinion controlling weight.  <u>See</u> 20 C.F.R. § 416.927(c) ("Unless we give a treating source's opinion controlling weight . . . , we consider all of the following factors in deciding the weight we give to any medical opinion.").  In the present case, the ALJ granted controlling weight to the opinion of a treating specialist, Dr. Nagareddy.  The ALJ, therefore, was not required to use the six-factor analysis to evaluate the other opinions in the record from non-treating sources, including the opinions of Plaintiff's teachers.  In light of these facts, the court finds that the ALJ did not err when he gave controlling weight to Dr. Nagareddy's opinion and that the ALJ's decision was supported by "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Lewis</u>, 125 F.3d at 1440.

19

Plaintiff also argues that the claimant "continued to have marked impairment in attending and completing tasks," despite any improvement on medication. According to Plaintiff, the ALJ plucked out notations indicating that the claimant improved after being on medication. [Doc. 10 at 21-23]. Plaintiff cites to records from Dr. Simms and Dr. Bush, as well as to school records, which allegedly show that the claimant continued to have marked impairments in attending and completing tasks. [Id.]. In October 2008, Dr. Simms noted that the claimant "continues to exhibit impulsive and intrusive behavior." [R. at 270]. Dr. Simms stated in November 2008 that the claimant had an "inability to progress/achieve in school secondary to poor focus, impulsive/disruptive behavior, and poor organization." [R. at 287]. The next month, in December 2008, Dr. Bush found that the "claimant continues to have some difficulty with completing tasks, sitting still, and interpersonal relationships." [R. at 292]. Also in December 2008, a speech-language evaluator opined that the claimant "presents with developmental and communication delays with significant ADHD issues even when on medication." [R. at 290].

In addition to medical source notes, Plaintiff points to the claimant's lack of improvement in his school performance. The claimant failed to meet the basic academic standards in a number of subjects in both 2010 and 2011. [Doc. 10 at 22-23;

R. at 197, 200, 236]. Plaintiff also cites to the questionnaires completed by Ms. Tillman and Ms. Williams, discussed *supra*. [R. at 157-66, 278-86].

The court concludes that substantial evidence supports the ALJ's finding that the claimant has less than marked limitations in attending and completing tasks and that the claimant's symptoms decreased shortly after he began taking medication. The ALJ did not ignore evidence in the record indicating that the claimant has difficulty in school. The ALJ wrote in his decision that the "claimant's ability to focus and maintain attention and concentration is limited due to ADHD. He loses focus, fails to complete classroom assignments, [and] requires teacher assistance in completing tasks." [R. at 23]. However, the ALJ noted that the claimant's condition improved soon after beginning medication in September 2008. [R. at 24, 270]. The ALJ's finding on this issue was not based on an isolated statement plucked out of context.

There are numerous places in the record noting the claimant's improvement after being on medication. In October 2008, Dr. Simms wrote that the claimant's "grandmother states she has noticed a positive change since the medicines were started. She states the patient seems less hyperactive and seems a little bit more able to respond to direction." [R. at 24, 270]. Dr. Bush noted in December 2008 that the claimant's "grandmother is the historian and appears reliable" and that she reported that "the

21

child's ADHD symptoms have been improved, albeit to a limited degree." [R. at 24,
292]. The ALJ also pointed out that "James E. Askew, Ph.D., the claimant's
counselor, explained in June 2009 that the claimant was making great progress in
psychotherapy." [R. at 24, 332]. At the administrative hearing in September 2011, the
claimant's grandmother was asked and answered as follows:

> Q. And how about his attention deficit disorder, is that better on Concerta?
> A. Yes ma'am, when he's on the medication, he does fine.

[R. at 45]. In light of this evidence, the court finds unpersuasive Plaintiff's contention
that the ALJ plucked out notations indicating that the claimant's symptoms decreased.
[Doc. 10 at 21].

Plaintiff correctly notes that the record shows that the claimant has poor
performance in school, special education placement, and special assistance and
accommodations. [Doc. 10 at 22-23]. However, this evidence was discussed by the
ALJ. [R. at 22-23]. The ALJ explained:

> The claimant has cognitive deficiencies due to BIF [borderline
> intellectual functioning], which is further exacerbated by ADHD and low
> expressive-receptive language skills, which have resulted in difficulty
> acquiring and learning information. The claimant has academic skills
> below grade level and difficulty retaining information spawning special
> education placement in all academic subjects, teacher assistance for
> completing assigned tasks, and modifications during testing and
> classroom instruction such as small group instruction, charts, pictures,

and oral discussion.  Despite such tactics, as of September 2011, the claimant continued to exhibit poor academic performance.

[R. at 23].  The ALJ concluded that the claimant's academic struggles revealed that he has marked limitations in acquiring and using information.  [R. at 23].  The ALJ's finding is supported by evidence in the record, such as notations from the claimant's special education teacher, Ms. Pelzer, who found that he was having extreme difficulty demonstrating and applying knowledge that had been learned in class.  [R. at 192].  Although Plaintiff argues that the ALJ also should have found that the claimant has marked limitations in attending and completing tasks, substantial evidence supports the ALJ's conclusion that the claimant has less than marked limitations in this domain.  As discussed *supra*, the claimant's treating psychiatrist Dr. Nagareddy opined in December 2010 that the claimant has marked impairments in acquiring and using information but less than marked impairments in the other five domains, including attending and completing tasks.  [R. at 322-23].  The ALJ stated in his decision that he assigned controlling weight to Dr. Nagareddy's opinion.  [R. at 28].

In summary, the ALJ considered the claimant's record as a whole.  He discussed the medical and school records and cited to the questionnaires completed by the claimant's teachers.  The ALJ  gave controlling weight to the claimant's treating

23

psychiatrist and concluded that the claimant does not have an impairment or combination of impairments that functionally equals one of the Listings. See 20 C.F.R. § 416.926a(d). Because substantial evidence supports the ALJ's finding that the claimant is not disabled, remand is not warranted.

## VI.    Conclusion

For all the foregoing reasons and cited authority, the court finds that the decision of the ALJ was supported by substantial evidence and was the result of an application of proper legal standards. It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

**SO ORDERED**, this 14th day of April, 2014.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE